## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID CALHOUN | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO.  08-458 |
| v. | : | |
| | : | |
| KENYA MANN, JOEL GOLDSTEIN | : | |
| and CYNTHIA DAUB, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                    December 18, 2008

      Presently before this Court is Defendants Kenya Mann and Joel Goldsteins'
Motion to Dismiss Plaintiff David Calhoun's Amended Complaint pursuant to Federal Rules of
Civil Procedure 12(b)(1) and 12(b)(6), and Defendant Cynthia Daub's Motion to Dismiss.  For
the reasons discussed below, both Motions are granted.

## I.  PROCEDURAL BACKGROUND

      On January 30, 2008, Plaintiff filed a Motion to Proceed *In Forma Pauperis*,
which was denied on February 4, 2008, without prejudice, and with the caveat that the Motion
could be reinstated should Plaintiff pay the filing fee.  On February 15, 2008, Plaintiff provided
notice that he wished to proceed with the suit, and leave to proceed *in forma pauperis* was
granted on March 18, 2008.  On March 14, 2008, a Notice of Appearance was entered on behalf
of Defendants Mann and Goldstein.

Plaintiff filed a Complaint on March 18, 2008, and an Amended Complaint on June 16, 2008.  Plaintiff filed a Motion to Amend Complaint on August 28, 2008, which was denied on September 17, 2008.

Defendants Mann and Goldstein filed a Motion to Dismiss on September 26, 2008 (AUSA Motion to Dismiss).  Plaintiff, on October 6, 2008, filed a Motion for Extension of Time to respond to the AUSA Motion to Dismiss, which was granted on October 9, 2008.  Plaintiff filed a Response on October 31, 2008.  Defendants Mann and Goldstein filed a Reply to Plaintiff's Response on November 17, 2008.

On November 7, 2008, a Notice of Appearance was entered on behalf of Cynthia Daub.  On November 24, 2008, Defendant Daub filed a Motion to Dismiss (Parole Board Motion to Dismiss) and Brief in Support of her Motion.  Local Rule 7.1(g) provides a party with fourteen days to respond to a motion.  Plaintiff's response was due on December 8, 2008.  E.D. PA CIV. P. 7.1(g).  Plaintiff has not responded.  Given Plaintiff's failure to timely respond, this Court examines the Parole Board Motion to Dismiss on the merits.  Plaintiff filed a Motion to Appoint Counsel on December 11, 2008.

## II.  FACTUAL BACKGROUND

A federal grand jury, on June 29, 2005, returned a nineteen count indictment charging Plaintiff with conspiracy to distribute more than five kilograms of cocaine, distribution of cocaine, and possession of cocaine with intent to distribute.  (AUSA Mot. to Dismiss 2-3.)  On April 20, 2006, a jury convicted Plaintiff  "of a number of narcotics charges, including, *inter alia*, conspiracy to distribute more than five kilograms of cocaine," and was sentenced to a "20-year term of imprisonment and 10 years of supervised release."  United States v. Calhoun, 276 Fed.

Appx. 114, 115 (3d Cir. 2008).  Plaintiff appealed the District Court's ruling to the Third Circuit asserting "claims of sufficiency of the evidence, trial court error, and prosecutorial misconduct." Id. at 116.  On May 1, 2008, the Third Circuit found the claims of error to be without merit affirmed the judgments of the District Court.  Id. at 120.

Plaintiff's present suit does not challenge his conviction, but rather seeks punitive and compensatory damages in excess of $75,000, plus costs and fees, due to his allegedly illegal detention at the federal detention center (FDC) in Philadelphia.  (Am. Compl. at 3-4.)  Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985, as well as a Bivens action[1] stating that his Sixth, Fifth, and Fourteenth Amendment rights were violated by Defendants.  (Id.)

Plaintiff was transferred to the FDC, in December 2005, from a Pennsylvania state prison in Houtzdale by writ of *habeas corpus ad pro sequendum*.  Prior to transfer, he was not provided an extradition hearing nor did he receive a hearing upon his arrival at the FDC. (Amend. Compl. 4.)  Plaintiff claims that he should have been released on February 23, 2006, as his state sentence expired at that time, and as he had posted bail on his federal sentence.  (Id.) Plaintiff avers that "the issue of plaintiffs release should have been resolved, but instead evidence reveals that plaintiff was deliberately denied access to the information concerning his detention preventing him from challenging the issue to the appropriate authority responsible for his

---

1.  Plaintiff's Amended Complaint provides that Plaintiff states a claim under "28 § 1331 Bivens Action."  28 U.S.C. § 1331 provides federal courts with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  This Court will assume that Plaintiffs asserts a Bivens action.  See Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) (stating cause of action against federal officials).  A Bivens action, which is the federal equivalent of the Section 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law. Brown v. Philip Morris, 250 F.3d 789, 800 (3d Cir. 2001); see also Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004). Here, the claims alleged against Defendants Mann and Goldstein arise from their acts as officers of the United States.

detention." (Id.)  Further, "evidence reveals that the parties were working *in peri delicto* to assure plaintiff's deprivation of liberty."  (Id.)

        Plaintiff filed a formal request on February 24, 2006, to "determine detainer or release."  (Id. at 3.)  Two FDC staff, Mr. Kembel and Mr. Brito, interviewed Plaintiff, and another FDC employee, Ms. Bowright, followed up with him about his detention.  (Id.)  In March 2006, Mr. Briton and Mr. Kembel told Plaintiff that he was being held "for sentence."  (Id.)  Plaintiff never received a written response, but Ms. Bowright told him that she had spoken to Defendant Mann, "who assured her that plaintiff was being held by legal authority, but would not say how."  (Id.)  Case manager McGuiness "could not determine" the basis for Plaintiff's detention, telling him to contact his "appointed-counsel."  (Id.)  Plaintiff wrote "his attorney William Cannon to determine the nature of [his] detention and to fight the issue."  (Id.)  Mr. Cannon informed Plaintiff that he "was being held by Penn. Parole Board detainer," but Plaintiff asserts that "later the Commonwealth Court of Penn. would determine that such fact was no longer true at the time Mr. Cannon wrote the letter."  (Id.)  Plaintiff does not provide any details about the purported Commonwealth Court determination "that such fact was no longer true at the time Mr. Cannon wrote the letter."  (Id.)  Plaintiff's Response to the AUSA Motion to Dismiss provides, as an exhibit, Mr. Cannon's letter, which states in part,

> In case I have not communicated this fact to you by the time you receive my letter it is not the Federal charges that are keeping you in custody.  Because you were cooperating with the Government at one time they did not oppose you being given bail. However, you were on State parole at the time of the Federal indictment and *it is the Pennsylvania State Parole Board that has placed a detainer*

4

> *against you which will remain in place until the*
> *Federal charges are resolved.*

(Def. Resp. to Mot. to Dismiss, Ex. 4.) (emphasis added)

Plaintiff asserts that the "Parole Board and Federal Courts" did not provide

"notice of the nature of his detention because no hearing was had by either as required by law."

(Id. at 3.)  If he had been given a reason for this continued detention, Plaintiff states that "he

would have taken the proper procedures . . . but he did not know what to argue nor which court to

argue it because he did not know which authority held him."  (Id.)

## III.  LEGAL STANDARDS

### A.      Standard For A Motion To Dismiss

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the legal sufficiency of

a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), a

defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which

relief can be granted.  FED. R. CIV. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d

Cir. 2005).  The Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544

(2007), altered the standard of review for a motion to dismiss pursuant to Rule 12(b)(6).  Phillips

v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008).  In construing the Rule 12(b)(6)

standard generally, the Court provides that the plaintiff must provide more than a formulaic

recitation of a claim's elements amounting to mere labels and conclusions.  Twombly, 550 U.S.

544, ---.  Additionally, the Court held that the complaint's "factual allegations must be enough to

raise a right to relief above the speculative level."  Id.  The Third Circuit has held that Twombly

applies generally to all motions brought under Rule 12(b)(6).  Phillips, 515, F.3d at 232.

5

The question before the court is not whether the plaintiff will ultimately prevail. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Rather, the court should only grant a 12(b)(6) motion if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)). When considering a motion to dismiss, the court must "accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989). However, the court will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**B.      Claims Brought Under Section 1983 and Bivens**

Section 1983 of Title 42 of the United States Code creates a cause of action for individuals whose constitutional or federal rights are violated by those acting under the color of state law. 42 U.S.C. § 1983; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-285 (2002) (noting that 42 U.S.C. § 1983 provides a remedy for violations of rights "secured by the Constitution and laws" of the United States.)

A Bivens action is the federal equivalent of a Section 1983 action arising when a defendant has violated plaintiff's rights under the color of federal law. Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) (stating cause of action against federal officials); Brown v. Philip Morris, 250 F.3d 789, 800 (3d Cir. 2001) (holding that a Bivens action is the federal equivalent of a § 1983 cause of action); Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004)

6

(citing <u>Brown</u> for the proposition that <u>Bivens</u> actions "are simply the federal counterpart to §

1983 claims brought against state officials.").

## IV.   DISCUSSION

Plaintiff's Amended Complaint provides scant discussion of Defendants allegedly

unconstitutional actions.  In light of this Court's duty to liberally construe a *pro se* litigant's

proceedings, the Court will nonetheless address Plaintiff's claim on this merit.  <u>Dluhos v.

Strasberg</u>, 321 F.3d 365, 369 (3d Cir. 2003).

### A.      <u>Defendants Mann and Goldstein</u>

Defendants Mann and Goldstein move to dismiss Plaintiff's claims against them

on grounds of absolute immunity.  (AUSA Mot. to Dismiss 7.)  In the alternative, they assert that

they "are entitled to qualified immunity from suit."  (<u>Id.</u> at 11.)  Further, to the extent that

Plaintiff "alleges one or more common law torts . . . such claim(s) should be dismissed for lack

of subject matter jurisdiction" as federal statute[2] provides that "only the United States - and not

any of its employees - is a proper defendant." (<u>Id.</u> at 16.)

### 1.      Absolute Immunity

In <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976), the United States Supreme Court

held that given the common law immunity historically granted to prosecutors, state prosecutors

would be absolutely immune from liability under section 1983 for actions performed as an

integral part of the judicial process.[3]  <u>Id.</u> at 427, 430-31.  The Supreme Court noted that <u>Imbler</u>

2.  <u>See</u> Federal Employees Liability Reform and Tort Act, 28 U.S.C. § 2679(b)(1).

3.  There exist some questions regarding the immunity afforded prosecutors under the common law when Section
1983 was enacted due to the fact that, in 1871, most states did not have a public prosecutor.  <u>Kalina v. Fletcher</u>, 522
U.S. 118, 135 (1997) (Scalia, J. concurring) ("There was, of course, no such thing as absolute prosecutorial

(continued...)

"did not attempt to define the outer limits of the prosecutor's absolute immunity." Kalina v. Fletcher, 522 U.S. 118, 125 (1997).  However, in subsequent cases, the Court defined out the parameters of prosecutorial immunity finding that it attaches to a prosecutor's in-court behavior. See Burns v. Reed, 515 U.S. 1145 (1991).  In Buckley v. Fitzsimmons, the Court went further, holding that any act "undertaken by a prosecutor in preparing for trial and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  509 U.S. 259, 273 (1993).  Conducting a functional analysis of the prosecutor's role, the Supreme Court, in Kalina, held that a prosecutor's preparation and filing of a charging document was protected by absolute immunity, while the same prosecutor's attesting to the truth of the statements in these documents was not protected, as "testifying about facts is the function of the witness, not of the lawyer." Kalina, 522 U.S. at 130.

The Supreme Court's jurisprudence is clear.  Grants of absolute immunity are "not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." Id. at 127 (internal quotation marks and citations omitted).  Consistent with this approach, the Third Circuit has noted that "[c]ourts are obligated to take a functional approach to questions of absolute immunity, and should focus on 'the nature of the function performed, not the identity of the actor who performed it and evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of that function.'"

---

3.  (...continued)
immunity when § 1983 was enacted. (Indeed, as the Court points out, *ante*, at 506,, n. 11, there generally was no such thing as the modern public prosecutor.")).  Further, the first United States case recognizing any form of immunity for public prosecutors was decided in 1896, twenty-five years after Section 1983 was enacted.  See Griffith v. Slinkard, 44 N.E. 1001 (Ind. 1896).

Light v. Haws, 472 F.3d 74, 78 (3d Cir. 2007) (quoting Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001); Larsen v. Senate of Commonwealth of Pa., 152 F.3d 240, 249 (3d Cir. 1998)).

Prosecutors bear the "heavy burden" of showing that absolute immunity is warranted,  Light, 472 F.3d 80-81, and that he or she "was functioning as the state's advocate when performing the action(s) in question." Yarris v. County of Del., 465 F.3d 129, 136 (3d Cir. 2006).  Conduct "intimately associated with the judicial phases of litigation" including participation in litigation, acts undertaken by a prosecutor in preparing for the "initiation of judicial proceedings or for trial, and acts which occur in the course of the prosecutor's role as advocate for the State" are actions performed in a "quasi-judicial" role and subject to absolute immunity.  Light, 472 F.3d at 77 (internal quotation marks and citations omitted).  Thus, "[t]he act of bringing an indictment, initiating prosecution even for suspect reasons, knowingly introducing fraudulent evidence into a judicial proceeding, and failing to disclose material evidence are all within the 'traditional functions of an advocate' and receive absolute protection." Knight v. Poritz, 157 Fed. Appx. 481, 487 (3d Cir. 2005) (citations omitted).

Under this functional approach, prosecutorial immunity does not extend to administrative functions.  See Barbara v. Smith, 836 F.2d 96, 99 (2d Cir. 1987) ("when a prosecutor performs an investigative or administrative function rather than a prosecutorial one, absolute immunity is not available."); Rose v. Bartle, 871 F.2d 331, 346 (3d Cir. 1989) (contrasting the prosecutor's "quasi-judicial" role from her "administrative/investigative" role.)[4]

---

4.  A recent case from the Western District of Pennsylvania held that absolute prosecutorial immunity extends to "any administrative or investigative actions taken after a criminal prosecution has been initiated" and are "necessary for maintaining the criminal prosecution."  Miller v. Westmoreland County Dist. Attorney's Office, Civ. A. No. 08-817, 2008 WL 3875380, at *5 (W.D. Pa. Aug. 14, 2008).  However, the Eastern District of Pennsylvania has not adopted this proposition and has continued to apply a fact specific analysis of the prosecutor's functions throughout

(continued...)

This functional approach to determining absolute immunity is "deeply embedded in our § 1983 jurisprudence," Kalina, 118 S. Ct. at 135 (Scalia, J. concurring), requiring a fact intensive examination of "the unique facts of each case."  Odd v. Malone, 538 F.3d 202, 212 (3d Cir. 2008).  Such analysis requires a narrow definition of the act in question as "almost any action by a prosecutor . . . could be said to be in some way related to the ultimate decision whether to prosecute."  Id. at 213; see Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1st Cir. 1995) ("The prosecutorial nature of an act does not spread backward like an inkblot immunizing everything it touches.").

In the case at bar, the Amended Complaint provides little factual support for Plaintiff's claims against Defendants Mann and Goldstein.  The Amended Complaint mentions Defendant Mann twice.  She is first referenced when Plaintiff notes that Ms. Bowright contacted "Assistant US Attorney Kenya Mann who assured her that plaintiff was held by legal authority, but would not say how," and secondly when Plaintiff noted that both "Mann and Goldstein were responsible for the administrative functions [regarding termination of] the writ and providing a hearing for plaintiff to revoke bail in order to detain him."  (Am. Compl. 3-4.)  This last quote is the Amended Complaint's only reference to Defendant Goldstein.

Plaintiff argues that Defendants Mann and Goldstein were involved in the decision to detain him after the expiration of his state sentence.  Both the Supreme Court and the Third Circuit have stated that decisions to grant or deny absolute immunity require fact-specific analysis.  See Odd, 538 F.3d at 212 ("immunity determinations cannot be made without reference

_____

4.  (...continued)
the course of litigation.

10

to the unique facts of each case.").   At the "heart" of a Rule 12(b)(6) motion, is the idea that the "(1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader."  5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2007).

Looking at the Amended Complaint in a light most favorable to him, Plaintiff has asserted that Defendants Mann and Goldstein detained him, after the expiration of his state sentence.  Such actions are not "intimately associated with the judicial phases of litigation" such that Defendants Mann and Goldstein were acting as advocates for the State.  Accordingly, a grant of absolute immunity is not warranted at this stage of the litigation process.

### 2.    Qualified Immunity

Nonetheless, this Court finds that Defendants Mann and Goldsteins' actions are protected by qualified immunity.  Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  "Most public officials are entitled only to qualified immunity" from Section 1983 actions. Yarris, 465 F.3d at 135; see Buckley, 509 U.S. at 273 (ordinarily, "[q]ualified immunity represents the norm") (internal quotation marks and citations omitted); see also Margaret Z. Johns, Reconsidering Absolute Prosecutorial Immunity, 2005 BYU L. REV. 53, 55 (2005) (providing historical and policy arguments against absolute prosecutorial immunity noting that "qualified immunity protects all but the most incompetent and willful wrongdoers.")

Qualified immunity is appropriate if a prosecutor's "actions were objectively reasonable in light of the constitutional rights affected."  Odd, 538 F.3d at 217.  Pursuant to the test articulated by the Supreme Court in Saucier, courts must engage in a two-tiered analysis to determine whether a Section 1983 defendant is entitled to qualified immunity.  First, the court must determine whether "'[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right[.]'"  Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir. 2008) (quoting Saucier, 533 U.S. at 201).  If so, the court must then determine "whether the right was clearly established."  Id.  In considering this second prong of the Saucier test, the Third Circuit clarified that "[a] right is clearly established for the purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Hubbard, 538 F.3d at 236 (quoting Williams v. Bitner, 455 F.3d 186, 191 (3d Cir. 2006)).  This standard "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  Id. (quoting Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005)).  Plaintiff's Amended Complaint fails to articulate sufficient facts showing that Defendants' conduct violated any constitutional right.  In fact, Plaintiff fails to articulate **any** specific actions Defendants Mann and Goldstein took that may have violated his rights.  (emphasis added.)

Plaintiff avers that AUSA Mann assured Ms. Bowright "that plaintiff was held by legal authority, but would not say how."  (Am. Compl. 3.)  However, Plaintiff later notes that his counsel told him that he "was being held by Penn. Parole board detainer."  (Id.)  Plaintiff's only allegations are that (1) Defendant Mann spoke with Ms. Bowright telling her that Plaintiff was legally detained and (2) that she, along with Defendant Goldstein, "were responsible for

12

administrative functions of determining the termination of the writ responsible and providing a hearing for plaintiff to revoke bail in order to detain him."  (Id. at 4.)  Plaintiff provides no evidence of misconduct by Defendants Mann and Goldstein.  In fact, Plaintiff has not shown that either Defendant played a role in the decision to detain Plaintiff after his state sentence expired on February 23, 2006.  In fact, Plaintiff's own counsel stated that the federal government (and thus its employees Defendants Mann and Goldstein) played no role in his continued detention.

A series of conclusory allegations does not meet the pleading standards of Rule 8 or survive a motion to dismiss under Rule 12(b)(6).  Twombly, 550 U.S. 544, ---- ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  Plaintiff has alleged no facts supporting his conclusion that Defendants' actions violated any constitutional rights and for this reason his claims against Defendants Mann and Goldstein must be dismissed.

Even if, for the sake of argument, Defendants Mann and Goldstein violated Plaintiff's constitutional rights, there is insufficient evidence to suggest that their actions were "sufficiently clear" that reasonable officials would understand they violated Plaintiff's rights.  In June 2005, a grand jury returned a nineteen count indictment against Plaintiff.  From that time until his conviction on April 20, 2006, there was a near constant flurry of court activity.  Twice, Plaintiff failed to appear in court to plead guilty (as scheduled), and as a result trial was set for February 6, 2006.  (Order, USA v. Esteve et al, Crim. A. No. 05-363-6, E.D. Pa. Dec. 23, 2005.)  On January 23, 2006, Plaintiff's counsel withdrew, and he was given thirty days to obtain new

counsel.  (Order, <u>USA v. Esteve et al</u>, Crim. A. No. 05-363-6, E.D. Pa. Jan. 23, 2006.)  William

Cannon was formally added as Plaintiff's counsel on January 30, 2006.    (Notice of

Appointment of Counsel – Crim. Doc. No. 163, <u>USA v. Esteve et al</u>, Crim. A. No. 05-363-6,

E.D. Pa. Jan. 30, 2006.)  On February 2, 2002, Plaintiff's trial was rescheduled from February 6,

2006, to April 17, 2006.[5]  (Order, <u>USA v. Esteve et al</u>, Crim. A. No. 05-363-6, E.D. Pa. Feb. 2,

2006.)  The Order announcing the change of the trial date stated that "if a defendant is presently

in jail, the defendant or his counsel shall notify the undersigned in writing immediately so that

the necessary procedures can be taken to have the defendant present in the courtroom."  (<u>Id.</u>)  On

March 14, 2006, the trial court issued an Order that Plaintiff needed to file any motions prior to

April 3, 2006.  (Order, <u>USA v. Esteve et al</u>, Crim. A. No. 05-363-6, E.D. Pa. Mar. 14, 2006.)

     At no time did Plaintiff contact the Court or the Defendants about his

incarceration.  As of February 23, 2006, Plaintiff was under indictment, he had obtained new

counsel, and his February 2006 trial was delayed until April 2006.  When FDC staff suggested

that Plaintiff contact his counsel to determine his detention status he did so.  (Am. Compl. 3.)  As

noted above, Plaintiff's counsel informed him that

> In case I have not communicated this fact to you by
> the time you receive my letter it is not the Federal
> charges that are keeping you in custody.  Because
> you were cooperating with the Government at one
> time they did not oppose you being given bail.
> However, you were on State parole at the time of
> the Federal indictment and *it is the Pennsylvania*
> *State Parole Board that has placed a detainer*
> *against you which will remain in place until the*
> *Federal charges are resolved.*

---

5.  Given the initial February 6, 2006, trial date, Plaintiff's trial was slated to begin seventeen days prior to expiration of his state sentence.

(Defs.' Resp. to Mot. to Dismiss, Ex. 4.) (emphasis added).

Given these facts, it is entirely reasonable for Defendants Mann and Goldstein to believe that Plaintiff's continued detention in no way violated his constitutional rights. Accordingly, for the reasons discussed above, Plaintiff's claims against Defendants Mann and Goldstein are dismissed on account of qualified immunity.

**B.    Defendant Daub**

Defendant Daub is not mentioned in either the Complaint or the Amended Complaint.  Instead, Lawrence F. Murray, Board Secretary of the Pennsylvania Board of Probation and Parole is listed as a Defendant.  (Compl. 1; Amend. Compl. 1.)  This Court, on September 17, 2008, issued a Memorandum and Order amending Plaintiff's Amended Complaint so that the "caption reflects the correct Secretary of the Pennsylvania Board of Probation and Parole," i.e., Ms. Daub.  (Mem. and Order, Calhoun v. Daub, Civ. A. No. 08-0458, E.D. Pa. Sep. 17, 2008.)  The only reference to Defendant Daub's predecessor noted that he "was responsible for assuring that plaintiff was to be released on his max term expiration date."  (Am. Compl. 4.)

Defendants in "a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see Rizzo v. Goode, 423 U.S. 362 (1976); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (*per curiam*) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).  The personal involvement requirement may be satisfied by a showing of "personal direction or of actual knowledge and acquiescence."  Rode, 845 F.2d at 1207.  The Third Circuit has noted that *respondeat superior* liability is not sufficient to sustain a

civil rights claim against a state official absent a showing that the defendant provided "personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  Id.

Plaintiff has failed to provide even the most basic evidence suggesting that Defendant Daub knew of Plaintiff's incarceration much less his allegedly unlawful detention. There is no evidence that Defendant Daub either directed or acquiesced in permitting the decision detain Plaintiff after the expiration of his state sentence.[6]  Accordingly, with regard to Defendant Daub, Plaintiff has failed to state a claim warranting relief.

An appropriate order follows.

---

6.   This Court is not suggesting that Plaintiff was unlawfully detained.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID CALHOUN | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO.  08-458 |
| v. | : | |
| | : | |
| KENYA MANN, JOEL GOLDSTEIN | : | |
| and CYNTHIA DAUB, | : | |
| | : | |
| Defendants. | : | |

## ORDER

   **AND NOW**, this 18th day of December, 2008, upon consideration of the AUSA

Motion to Dismiss (Doc No. 18), the Parole Board Motion to Dismiss (Doc. No. 26) and

Plaintiff's Response to the AUSA Motion to Dismiss (Doc. No. 21), and the Reply of Defendants

Mann and Goldstein (Doc. No. 24) it is hereby **ORDERED** that both Motions to Dismiss are

**GRANTED.**

   **JUDGMENT IS ENTERED** in favor of Defendants Kenya Mann, Joel

Goldstein, and Cynthia Daub, and against Plaintiff David Calhoun.

   It is further **ORDERED** that plaintiff's motion for appointment of stand-by

counsel (Docket No. 28) is **DENIED.**

   This case is **CLOSED.**


                                BY THE COURT:


                                 _s/ Ronald L. Buckwalter_____
                                 RONALD L. BUCKWALTER, S.J.